IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARY WOOLFORD GIBBS,           *

      Plaintiff                   *

v.                          *            Civil Case No. 16-00395-JMC

BOARD OF EDUCATION OF
DORCHESTER COUNTY,           *

      Defendant.               *

* * * * * * *

## MEMORANDUM OPINION

Plaintiff, Mary Gibbs, brought this action against Defendant, Board of Education of Dorchester County (the "Board"), alleging illegal employment practices by the Board in violation of Mrs. Gibbs's rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e ("Title VII") (Count I) and 42 U.S.C. § 1981 ("Section 1981") ("Count II"). Specifically, Plaintiff, an African-American woman, contends that she was undercompensated as a result of her race, and as relief for that alleged violation, she seeks a declaratory judgment, $100,000 in compensatory damages, and reasonable attorneys' fees and costs. (ECF No. 1-9.) The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c) and Local Rule 301.4. (ECF Nos. 13, 14.) Now pending before the Court is Defendant's Motion for Summary Judgment. (ECF No. 17). The Court has also considered Plaintiffs' Response in Opposition and Defendant's Reply. (ECF Nos. 18-1, 19). A hearing was held on December 16, 2016.  (ECF No. 23.) For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## I.    Background

In April 2012, the Board advertised for an "Accounts Payable Specialist or Accounts Payable Clerk, 12-Month Central Office Position."  That advertisement noted the following details regarding the position's salary:

> Commensurate with qualifications, experience, and determination
> of salary scale placement.  Based on the current salary scale for either:
>
> Accounts Payable Specialists – Administrative Secretary/Financial Specialist 12
> month.  Range is currently $30,183 – $50,095.  Or Accounts Payable Clerk
> – Office Clerk/Secretary $19,532 - $32,417.

ABT AFFIDAVIT, at ¶ 5 (ECF No. 17-5). The advertisement also listed a number of "qualifications" for the position, including, among other things:

- Graduation from a standard high school or possession of a State high school equivalence certificate- A.A. degree desirable in the fields of either finance, accounting, business or related fields.

- Two years of experience in finance, accounting, procurement;

  * * *

- Finance, accounting and/or bookkeeping experience to include a basic understanding of bank account reconciliation, budgeting and expense coding;

- Proficient technology skills to include Microsoft Word, Excel, Outlook;

- Experience with accounts receivable, and or accounts payable;

- Some experience w/ automated finance systems/or other databases

(ECF No. 17-5-B).

Plaintiff applied for that position later that same month. In her application, Plaintiff stated that she "had a high school diploma and was enrolled at a local community college working toward an associate degree in accounting." ABT AFFIDAVIT, at ¶ 6. She also indicated that "she had been working for the past twelve to thirteen years as 'Lead Supervisor – Head Teller' for

The Bank of Eastern Shore, [and] in that capacity she had been responsible for teller training, reconcilement of general ledger accounts, data entry, and general supervision of tellers." Id. Plaintiff did not, however, "indicate any professional experience in finance, accounting, or procurement, nor did she indicate any professional experience in accounts payable and/or receivables." Id.

Although Plaintiff did not meet all of the qualifications listed in the application, the Board, by way of letter correspondence, offered Plaintiff the position of Accounts Payable Clerk, assigned to the Finance Department in Central Office. ABT AFFIDAVIT, ¶ 7.  Her starting salary was $25,717, based on "Step 9 of the 2011-12 Office Clerk- Secretary – 12 month Salary Scale for Dorchester County Public Schools."[1] ABT AFFIDAVIT, ¶ 10.  Plaintiff acknowledged receipt of this letter correspondence and accepted the position, salary, and benefits described therein. She began in her new position with the Board on June 4, 2012. ABT AFFIDAVIT, ¶ 7, 10.

According to Mr. Charles Dwayne Abt, the Board's Human Resources Administrator at the time, Plaintiff's salary was calculated pursuant to the Department of Human Resources Salary Offer Guidelines (the "Guidelines"). ABT AFFIDAVIT, ¶ 8-9; ABT DEPOSITION at 24 (ECF No. 18-6). In accordance with those Guidelines, the Board determines the salary of newly hired non-certified employees on a case-by case basis, taking into account the following factors relating to the employee:

> (a) their Total Experience, which is generally defined as the total number of years of experience in the workforce; (b) their Relevant Related Experience, which is generally defined as the amount of experience a new hire has in the relevant field of work; (c) their Training, whereas a new hire with training, credentialing, education, or licensure which exceeds the minimum requirements of the position and which are an asset to DCPS will be placed on a higher salary scale, subject to salary parameters identified in the Vacancy Announcement; (d) Comparability/Equity, whereby a new hire's starting salary

---

[1] The terms of employment and compensation for Board employees, including Plaintiff, are governed by the Negotiated Agreement between the Board and the requisite employee bargaining unit.  ABT AFFIDAVIT, ¶ 19.

is compared with the salaries of existing employees in the relevant department; and (5) Budget, whereby consideration is given to the budget for the position and for the relevant department.

ABT AFFIDAVIT, ¶ 8-9.

Based on applying these factors, Plaintiff's starting salary was determined to be the approximate mid-point of the advertised range for the clerk position. ABT AFFIDAVIT, ¶ 8-9. In the eight months after beginning her position with the Board, Plaintiff received three salary increases, bumping her salary by approximately twenty percent. In July 2012, one month after being hired and the start of the new fiscal year, Plaintiff moved from Step 9 to Step 13 of the 12 Month Office Clerk/Secretary salary scale, and as a result, her annual salary increased to $26,617. ABT AFFIDAVIT, ¶ 11. Then, in January 2013, Plaintiff's position was reclassified from clerk to specialist, which moved her from Step 13 of the 12-Month Office Clerk/Secretary to Step 1 of the 12-Month Administrative Secretary/Financial Specialist pay scale of the Negotiated Agreement. That move increased her salary to $30,733. ABT AFFIDAVIT, ¶ 12; BROOKE AFFIDAVIT, ¶ 6-7 (ECF No. 17-4). And in February 2013, the Board, in response to Plaintiff's request for a salary increase, informed Plaintiff that she qualified for a two-step salary increase, raising her salary to $30,933. ABT AFFIDAVIT, ¶ 14.

In May 2013, the Board again advertised for a new position, this time for a "Payroll Specialist" position, the salary for which was based on the 12-Month 2012-2013 Administrative Secretary Salary Scale ($30,733 - $51,345). ABT AFFIDAVIT, ¶ 15. Plaintiff, at that point an "Accounts Payable Specialist," applied for the position, even though, at the time of her application, she did not have any payroll experience. Nonetheless, the Board, by way of letter correspondence, notified Plaintiff that she received the job but that there would be no change in her then-current salary of $30,933 ABT AFFIDAVIT, ¶ 16. Plaintiff acknowledged the salary and benefits, and accepted the position. Id. She began in that role on July 1, 2013. Id.

4

In February 2014, after beginning her new position, Plaintiff met with Mr. Abt in order to discuss a request she had made for a pay raise. ABT AFFIDAVIT, ¶ 19. According to Mr. Abt's affidavit, he explained that her move from Accountants Payable Specialist to Payroll Specialist was a lateral move, that the terms of her employment, including her compensation, were governed by the Negotiated Agreement, and that she was not entitled to raise. Id.

In July 2014, the start of the new fiscal year, Plaintiff, along with all other non-certificated employees, received a two-step salary increase—her fourth salary increase in two years—bringing her annual salary to $32,341, more than 25 percent higher than where she had started. ABT AFFIDAVIT, ¶ 20.  Plaintiff resigned from employment with the Board in October of 2014. ABT AFFIDAVIT, ¶ 21. At the time of her resignation, Plaintiff's salary was $32,341. ABT AFFIDAVIT, ¶ 20. Neither her "Exit Interview Survey" nor her "Notice of Separation" contained any allegations or claims that Plaintiff was undercompensated because of her race. ABT AFFIDAVIT, ¶ 21-22.

In April 2015, Plaintiff filed a formal charge of employment discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had engaged in unlawful employment discrimination against her on the basis of race by compensating her at a lower rate than her white colleagues.  (ECF Nos. 17-2, Exh. 1.)  The EEOC issued a Dismissal and Notice of Rights, and thereafter dismissed the charge and informed Plaintiff of her right to file a lawsuit.  (ECF Nos. 17-3, Exh. 2.)  Plaintiff then brought the instant action in February 2016.  (ECF No. 1.) Since that filing, the parties have completed discovery (ECF Nos. 1, 16), and based on the foregoing, the Defendant has filed a Motion for Summary Judgment that Plaintiff has opposed. (ECF Nos. 17, 18, 19.)

## II.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "In considering a motion for summary judgment, the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Gbenoba v. Montgomery Cty. Dep't of Health & Human Servs., 209 F. Supp. 2d 572, 575 (D. Md. 2002) (internal citations and quotations omitted).   "A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "Thus, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the nonmoving party on the evidence presented." Id. (brackets omitted).   "In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom in the light most favorable to the party opposing the motion but the opponent must bring forth evidence upon which a reasonable fact finder could rely." Id.   "The mere existence of a *scintilla* of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment." Id. (emphasis in the original).

## III.      Discussion

In her complaint, Plaintiff alleges that the Board undercompensated her on account of her race, in violation of Title VII and Section 1981.  (ECF No. 1.)  As support for this claim, Plaintiff identifies six white colleagues with higher salaries, none of whom, Plaintiff asserts, was more qualified than she.   (ECF No. 18-1.)  Defendant contends that despite the differences in pay between Plaintiff and these colleagues, Plaintiff has "failed to establish a prima facie case of

discriminatory compensation by the Board" because she was not similarly situated to the employees against whom she compares herself.  (ECF No. 17-1.) Alternatively, Defendant claims that even if Plaintiff can establish a prima facie case of discrimination, the Board had "legitimate, nondiscriminatory reasons for compensating Plaintiff as it did," namely, "Plaintiff's predecessors and successors had significantly more (both quantitative and qualitative) professional experience relevant to the positions" that she held, and Plaintiff "cannot point to any evidence which suggests that the Board's reasons were pretextual." Id.

Under Title VII, it is illegal for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a).  Similarly, Section 1981 can also "serve as the basis for bringing employment discrimination claims," as that section states in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... as is enjoyed by white citizens.....'" Morrow v. Farrell, 187 F. Supp. 2d 548, 553-54 (D. Md. 2002) (citing 42 U.S.C.A. § 1981(a) (West)). Although Plaintiff has plead both violations of Title VII and Section 1981, those claims will be discussed together, as "[t]he same analysis applies to race discrimination and retaliation claims under both Title VII and Section 1981.  Tibbs v. Baltimore City Police Dep't, No. CIV.A. RDB-11-1335, 2012 WL 3655564, at *3 (D. Md. Aug. 23, 2012) (citing James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir.2004))

Claims brought under Title VII and Section 1981 can be proven by either circumstantial or direct evidence.  Worden v. SunTrust Banks, Inc., 549 F.3d 334, 341 (4th Cir. 2008). However, "[w]here the record contains no direct evidence of discrimination," which Plaintiff

concedes here, then Plaintiff's "claims must be analyzed under the burden-shifting scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). [2] Tibbs, 2012 WL 3655564, at *3.  In McDonnell Douglas, the United States Supreme Court established a three-step burden shifting scheme whereby:

> the plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case drops out of the picture and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.

Wang v. Metro. Life Ins. Co., 334 F. Supp. 2d 853, 862 (D. Md. 2004) (citing Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir.2004)).  Despite the burden shifting nature of this process, however, the plaintiff always bears the burden of proving that the employer intentionally discriminated against her.  Morgan v. City of Rockville, No. GJH-13-1394, 2015 WL 996630, at *4 (D. Md. Mar. 4, 2015) (internal citations and brackets omitted).

In order "[t]o establish a prima facie case of discrimination in pay," under Title VII and Section 1981, Plaintiff "must show: (1) she is a member of a protected class; (2) she is as qualified as employees not of the protected class; and (3) she was paid less than other comparably qualified employees."  Trusty v. Maryland, 28 F. App'x 327, 329 (4th Cir. 2002);

---

[2] Plaintiff's motion contains no allegation of direct evidence of racial discrimination, and at the motions hearing Plaintiff's counsel conceded that no such direct evidence exists in this case. Plaintiff does relate the testimony of a co-worker, Ms. Laurie Dale, who agreed at deposition with Plaintiff's counsel's assertion that Plaintiff was not paid more money by the Board because she was an African-American. (ECF No. 18-9.) However, there is nothing in the record that shows how Ms. Dale arrived at that conclusion.  In fact, Ms. Dale, who was not Plaintiff's supervisor, noted that she was unfamiliar with the process of assigning salaries to positions and that she did not have any authority over salary determinations. (ECF No. 18-9.) Accordingly, without a specific factual foundation, such an unsupported opinion is not sufficient to constitute a genuine dispute of material fact.  Mettle v. CSX Transp., Inc., 221 F. App'x 262, 264 (4th Cir. 2007).

Morgan, 2015 WL 996630, at *6 ("[t]o establish a prima facie case of racial discrimination with respect to compensation, a plaintiff must show that he was paid less than a similarly situated individual not in h[is] protected class").  Because Plaintiff is an African-American woman, and her status as "a member of a protected class" is not disputed, only the second and third prongs are relevant to this analysis.

In support of her claim that she was paid less than "similarly situated" white employees, Plaintiff has produced two charts, in which she compares her salary, experience, and qualifications to those of six white employees of the Board. Those charts, which can be found in Plaintiff's reply memorandum (ECF No. 18-1), are replicated below with several additions and clarifications so as to accurately reflect the entirety of the record:

### ACCOUNTS PAYABLE CLERK/SPECIALIST

| Employee | Education | Experience | Starting Date | Starting Salary | Last Work Day | Final Salary |
|---|---|---|---|---|---|---|
| Tammy McCarter (white) | B.S. Business Admin. | 14 years of experience in area of finance and accounts payable, accounts receivable, cost accounting, and profit and loss statement preparation | 08/31/04 | $36,000 | 07/01/06 | $37,454 |
| Patricia Webster (white) | High School Degree | Employed by the Board since 1979. Prior to her employment with the Board, she had 8 years of experience in book keeping and as an office manager. She had 27 years of experience in the Finance Office when she was appointed to Accounts Payable Specialist | 08/2006 | $39,233 | 07/30/12 | $44,306 |
| Mary Gibbs (Black) | High School Degree & 6 months from | 13 years as a bank teller with 10 as "head teller" responsible | 07/01/12 | $26,717 | 07/01/13 | $30,933 |

9

| | Assoc. Degree in accounting | for the management of other tellers. No experience in Accounts Payable or Payroll | | | | |
|---|---|---|---|---|---|---|
| Karen Robinson (white) | High School Degree | Initially hired as an Accounts Payable Associate. She had 18 years' experience as customer service representative at a local bank, and 7 years as an accounts clerk to the City of Cambridge | 07/01/13 | $29,011 | Still employ-ed | Current Salary Not Known |

**PAYROLL SPECIALIST**

| Name | Education | Experience | Starting Date | Starting Salary | Last Work Day | Final Salary |
|---|---|---|---|---|---|---|
| Elizabeth Fiorenza (white) | High School Degree | 10 years as Accounting Clerk and 3 years payroll | 11/16/04 | $33,500 | 08/31/10 | $40,935 |
| Beth Wilson (white) | High School Degree and had earned 53 credits towards a degree in business administration | 12 years finance experience as a manager at a bank, nearly 7 years in HR, and 3 years payroll experience | 09/16/10 | $42,589 | 07/01/13 | $45,459 |
| Mary Gibbs (Black) | High School Degree & Associates Degree in Accounting | 13 years as a bank teller with 10 as "head teller" responsible for the management of other tellers. 1 year (by then) as Accounts Payable Clerk. No experience in Payroll | 07/01/13 | $30,933 | 10/2014 | $32,341 |
| Lori Gray (white) | High School Degree | 10 years in office management, 3 years payroll, and 4 years as accounting clerk | 12/08/14 | $38,511 | | As of 2015-2016 $40,428 |

"When a plaintiff bases the discrimination entirely upon a comparison to employees from outside her protected class," as Plaintiff does here, she "must demonstrate that the comparator

10

was 'similarly situated' in all relevant respects." Watson v. HSU Dev., Inc., No. GJH-13-2071, 2015 WL 3545623, at *3 (D. Md. June 5, 2015) (citing Sawyers v. United Parcel Serv., 946 F.Supp.2d 432, 442 (D.Md.2013) aff'd, No. 13–1777, 2014 WL 2809027 (4th Cir. June 23, 2014)); see also Lightner v. City of Wilmington, 545 F.3d 260, 265 (4th Cir.2008) ("The similarity between comparators ... must be clearly established in order to be meaningful."). And "[t]he appropriate factors to consider in a discriminatory compensation claim include whether the Plaintiff and those who she claims are similarly situated had the same or substantially similar experience, education, duties, and qualifications." Watson, 2015 WL 3545623, at *3; see also Morgan, 2015 WL 996630, at *7 ("[t]o establish a prima facie case of discriminatory compensation an employee ... must establish that the work was substantially equal in degree of skill, effort, and responsibility and was performed under similar conditions") (citing Itrube v. Wandel & Golterman Techs., Inc., 23 F.3d 401 (4th Cir.1994)).

This Court's decision in Romeo v. APS Healthcare Bethesda, Inc., 876 F.Supp.2d 577 (D.Md.2012), illustrates how this "similarly situated" standard is applied. There, Romeo, an African-American woman, was hired as an accounts receivable revenue supervisor by a healthcare management company. Id. at 582. Her job title was later changed to "Accountant III," though her salary remained the same despite receiving positive employer reviews of her work performance. Id. at 583. Shortly after that title change, her employer hired a white male for an "Accountant III" position and paid him at a higher salary than Romeo. Id. Based on this and other evidence in the record, Romeo filed suit against her employer, alleging, among other things, race and sex discrimination in violation of Title VII. Id.

This Court, however, granted the employer's motion for summary judgment, finding that Plaintiff and the white employee were not similarly situated, and thus Plaintiff was unable to

establish a prima facie case of discrimination.  Specifically, we explained that "[the employer] presented evidence that Romeo had about half as many years of experience as [the white male employee], and lacked [the white male employee's] master's degree." Id. at 592.  Given those differences, we concluded that "one cannot reasonably infer" that Romeo was paid less than the white male employee because she was an African-American woman. Id.

Plaintiff cannot establish a prima facie case of discrimination based on the above comparison evidence because, as was the situation in Romeo, there are significant differences between her and the six individuals against whom she compares herself.  At the time she was hired for the position of an Accounts Payable Clerk, Plaintiff had a high school diploma and was working towards her associate's degree. Additionally, she had worked for nearly thirteen years as a bank teller and "Head Teller" for a bank on the Eastern Shore, through which she was responsible for teller training and supervision, reconcilement of general ledger accounts, and data entry.  At her deposition, however, Plaintiff was unable to articulate with any specificity how such experience was a surrogate for direct experience in accounts payable or payroll.  GIBBS DEPOSITION, at 138-39, 148 (ECF No. 18-3).  Additionally, Plaintiff has presented no additional evidence, expert or otherwise, suggesting that her bank teller experience was comparable.

Plaintiff, in particular, takes issue with the higher salaries of three of the six white employees with whom she claim comparability: Ms. Karen Robinson, Ms. Beth Wilson, and Ms. Lori Gray. But each of these employees had greater relevant-work experience, levels of education, qualifications, or some combination thereof. Indeed, Ms. Robinson had eighteen years of bank experience, compared to Plaintiff's thirteen, and Ms. Robinson had seven years as an accounts clerk, whereas Plaintiff did not have any work experience in accounts payable or payroll prior to accepting the position. Similarly, Ms. Wilson and Ms. Gray each had three years

of payroll experience compared to Plaintiff who, at the time she began as a Payroll Specialist, did not have any payroll experience beyond verifying timecards for tellers she had supervised at her prior job.

Plaintiff acknowledges these differences but nonetheless contends that "certainly any small difference in experience between Mrs. Gibbs and her white comparators would not equate to their very sizeable salary differential." But this is not self-evident, and, as stated above, Plaintiff has presented no evidence to suggest that her experience was comparable or that the differences noted were, in fact, "small." While there may be instances where, without such evidence, the Court could reasonably conclude that differences in education, training, or experience for a given job were "small," this is not one of them.

Nevertheless, even if Plaintiff could establish a prima facie case of discrimination, Defendant would still be entitled to summary judgment. As stated above, "[i]f the plaintiff produces evidence for each element of the prima facie case, the burden of production shifts to the employer to articulate a 'legitimate, nondiscriminatory' reason for its actions." Morgan, 2015 WL 996630, at *4 (internal citations and quotations omitted). But "[i]f the employer produces evidence of a nondiscriminatory reason for its actions," then "the burden returns to the plaintiff to show that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Id. Where "the plaintiff cannot produce evidence that would allow the trier of fact to find the employer's reasons were a pretext for discrimination, defendant is entitled to summary judgment as a matter of law." Id. In assessing Defendant's asserted nondiscriminatory reason, "[i]t is not the province of the courts 'to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason.'" Kess v.

Mun. Employees Credit Union of Baltimore, Inc., 319 F. Supp. 2d 637, 645–46 (D. Md. 2004) (citing Dugan v. Albemarle County School Bd., 293 F.3d 716, 722 (4th Cir.2002)).

Here, Plaintiff has failed to present sufficient evidence that Defendant's proffered explanation for paying a lower salary was false and instead simply pretextual. Defendant explained that it paid Plaintiff a lower salary than her white colleagues because those other employees had "significantly more (both quantitative and qualitative) professional experience relevant to the positions" than Plaintiff. Such a race-neutral explanation is one that this Court has previously accepted as a valid non-discriminatory reason.   Romeo, 876 F. Supp. 2d at 592 ("relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision"; a plaintiff's "unsubstantiated allegations and bald assertions concerning her own qualifications ... fail to ... show discrimination"); see also Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) ("relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision"); Jones v. Dole Food Co., 827 F. Supp. 2d 532, 557 (W.D.N.C. 2011), aff'd, 473 F. App'x 270 (4th Cir. 2012) ("Greater work experience is a legitimate, non-discriminatory reason for paying more experienced employees more than an employee in a protected class") (citing Darden v. Housing Authority of Baltimore, 2006 WL 3231964, at *6 (D.Md. Nov. 7, 2006)).

It is Defendant's position that these differences between the employees were, in fact, meaningful.  Though Plaintiff may contend that this was not a good reason to make salary distinctions, Plaintiff has presented no evidence that it was not the real reason and instead was pretextual.  Even if Defendant's reasons were not effective or wise hiring policy, the Court would still not second guess those reasons absent evidence that they were pretextual. Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir. 2005) ("We do not sit as a

super-personnel department weighing the prudence of employment decisions made by the defendant") (internal citations omitted).  Consequently, absent such evidence of pretext, this Court is required to find that Plaintiff cannot meet her burden under the pretext prong of the McDonnell Douglas framework.

Plaintiff does not point to any evidence suggesting that the reason proffered by Defendant is not true.  Instead, she merely argues that it is "undisputed that [her] comparators did not have significantly more professional experience or education than [her]."  But, as pointed out above, it is not at all "undisputed."  To the contrary, Plaintiff has put forward no evidence other than her own "bald assertions" about her own experience to suggest that her experience was comparable, nor to seriously put into dispute Defendant's evidence to the contrary.  Plaintiff could have offered her own testimony as to how her experience was substantially similar to payroll or accounts payable experience, but could not except in generalities.  Plaintiff could have offered expert evidence on this issue but did not.  Plaintiff could have attempted to get concessions from Defendant's witnesses that the experience was comparable, but did not.  Plaintiff could have developed circumstantial evidence that Defendant didn't really rely on these differences in setting salary or was unaware of the differences prior to setting salary, but did not.  In the absence of such evidence, there is nothing from which a jury could reasonably conclude that the legitimate business reason proffered by Defendant was a pretext for discrimination.

At the motions hearing, Plaintiff's counsel further argued that the factors set forth under the hiring Guidelines were not consistently applied between the white employees and Ms. Gibbs. For instance, as it relates to the accounts payable position, Plaintiff argued that some candidates appeared to have a higher salary based, in part, on having a college degree, yet Ms. Gibbs was "only" six months away from completing her associate's degree and appeared to receive no

similar credit. Admittedly, as it relates to the Board's application of its hiring factors or Guidelines, the Court cannot discern a precise pattern of how each factor was weighted in every case or whether the various factors were always weighted with perfect consistency. Even so, a lack of mathematical precision in the application of these Guidelines does not render them a pretext.  Similarly, Plaintiff's own view of how the factors should be weighted is insufficient to show that they were a pretext for discrimination.

Finally, it is worth briefly addressing two remaining factual points that Plaintiff makes in her response to the motion for summary judgment, though, in doing so, the Court is mindful of the fact that Plaintiff does not demonstrate how either of these points are supportive of her legal argument under the <u>McDonnell Douglas</u> framework. First, Plaintiff states that she was the first African-American employed by the Board in the Financial Department.  Although context can be relevant in determining the existence of pretext, Plaintiff has presented no evidence of how this historical fact makes Defendant's proffered reasons in her case false and pretextual, and without such evidence, the mere fact that Plaintiff was the first African-American employee is insufficient to show unlawful discrimination. <u>Hawkins v. Leggett</u>, 955 F. Supp. 2d 474, 492 (D. Md. 2013) ("Although statistics are 'unquestionably relevant' to proving a disparate treatment claim under Title VII, a mere statistical disparity is generally insufficient to prove disparate treatment.").  Furthermore, as it relates to context, it is important to bear in mind that Plaintiff was initially placed in the middle of the salary range for her position upon hire, and within her first year, received step and salary increases totaling more than twenty percent of her original salary; a fairly sizeable pay progression that is not consistent with her accusations of racially motivated under-compensation.

16

Second, Plaintiff claims that prior to accepting her new position as a Payroll Specialist, a supervisor with the Board informed her that the change from Accounts Payable Specialist to Payroll Specialist was a promotion entitling her to greater pay, yet she did not receive an increase in pay and the Board later informed her that the move was a lateral and not a promotion. But, even if it were true that Plaintiff's new position should have been, contrary to Defendant's contention, a promotion and not a lateral move, Plaintiff has not shown how that factual dispute would support her claim of discriminatory pay as she has neither shown that "similarly situated" white employees were given such promotions upon a transfer of departments, nor has she explained how such evidence shows pretext on the part of the Board.

## IV. Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.  A separate order shall follow.

Dated: January 6, 2017                                        _____/s/_____
                                                                          J. Mark Coulson
                                                                          United States Magistrate Judge